UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RONALD MILLER                                                                PLAINTIFF

v.                                          CIVIL ACTION NO. 3:15-CV-00746-CRS-CHL

JAVITCH BLOCK, LLC                                                        DEFENDANT

Memorandum Opinion

I.  Introduction

This matter is before the Court on the motion of Defendant Javitch Block, LLC ("Javitch Block") for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 22. Plaintiff Ronald Miller responded, ECF No. 24. Javitch Block did not timely reply.

Javitch Block also filed a motion to stay further proceedings on its motion for summary judgment under Federal Rule of Civil Procedure 56(d)(3) pending the resolution of a related state case in the Jefferson County, Kentucky Circuit Court and the Kentucky Court of Appeals, ECF No. 25. Miller responded, ECF No. 26. Javitch Block did not reply.

Because these motions involve the same facts and similar issues, the Court will address them in a single memorandum opinion and order. The Court will deny Javitch Block's motion to stay. The Court will also grant in part and deny in part its motion for summary judgment.

II.  Background

In 2003, Miller cosigned a $15,000.00 private undergraduate student loan from Charter One Bank, N.A. for his son, Richard. Ex. 1 at 6, ECF No. 22-1. The loan application stated that Miller, as a cosigner of the loan, guaranteed the debt, accepted responsibility for paying the debt, and could be subject to the same debt collection methods as Richard, the primary debtor. *Id.* at

12. Soon after Miller cosigned the student loan, the National Collegiate Student Loan Trust 2003-1 ("National Collegiate") purchased the loan from Charter One Bank, N.A. *Id*. at 27.

On about December 14, 2010, Miller received a letter from an attorney at Javitch Block, a law firm, on behalf of National Collegiate.[1] Miller Aff. ¶ 3, ECF No. 24-1. The letter stated that National Collegiate sought to collect on the loan, which had apparently gone into default. *Id*. On December 27, 2010, Miller wrote a return letter to the law firm in which he disputed that he owed the alleged debt to National Collegiate. Ex. 1 at 14, ECF No. 22-1. In response, Javitch Block sent Miller a second letter containing details of the loan, including the amount owed, name of the creditor, address of the creditor, and date of the most recent payment. *Id*. at 15.

In November 2011, National Collegiate sued Miller and Richard, Miller's son, in the Jefferson County Circuit Court, Case No. 11-CI-007285, based on the loan for $22,673.38, plus accrued interest of $1,448.81 through October 15, 2011 and interest of 4.95% per annum from October 15, 2011. St. Ct. Compl. 1, ECF No. 15-2. Javitch Block represented National Collegiate in these proceedings. *Id*. at 2.

In March 2012, National Collegiate moved for judgment on the pleadings against Richard in the state court. Order 2/29/2012 1, ECF No. 15-3. The Jefferson County Circuit Court granted National Collegiate's motion for judgment on the pleadings and determined that Richard owed National Collegiate "$22.673.38 plus accrued interest and late charges in the amount of $477.80 through December 3, 2010 plus interest at the rate of 4.95% per annum thereafter until paid in full and the costs of the within action." *Id*.

In August 2013, National Collegiate moved for summary judgment in the state court case against Miller, the remaining defendant. Ex. 1 at 16, ECF No. 22-1. The Jefferson County Circuit

---

[1] The letter was written by an attorney from Javitch, Block & Rothbone, LLC, which became Javitch Block. Miller Aff. ¶ 3, ECF No. 24-1.

Court issued an opinion and order ("the state court opinion and order"). *Id*. at 41–44. In the state court opinion and order, the Jefferson County Circuit Court explained that Miller failed to deny that he had borrowed money from National Collegiate and failed to present "affirmative evidence to support his defenses that [National Collegiate did] not have an interest in the subject account or that the amount owed or Mr. Miller's liability [was] in dispute." *Id*. at 43. As such, the Jefferson County Circuit Court determined that there was not a genuine issue of material fact as to whether Miller was in default of the loan agreement and granted National Collegiate's motion for summary judgment. *Id*. at 44.

The state court opinion and order did not mention the monetary value of the judgment. But the Jefferson County Circuit Court observed at the beginning of the opinion and order that National Collegiate was "contend[ing] that Mr. Miller owes a balance in the amount of $24,122.19, plus interest and [was] requesting a judgment against Mr. Miller in that amount." *Id*. at 41.

In September 2014, before having obtained another order listing a judgment for a specific amount, National Collegiate—which was still represented by Javitch Block—obtained a writ of garnishment against Miller's bank account. Garnishment 1, ECF No. 15-6. In January 2015, National Collegiate, also through Javitch Block's representation, applied for costs in the Jefferson County Circuit Court for the filing fee and for fees incident to service of process and summoning of witnesses in the amount of $333.00. Bill of Costs 1, ECF No. 15-8. That same month, Javitch Block, on behalf of National Collegiate, caused a judgment lien to be entered against Miller, thereby encumbering his real estate. J. Lien 1, ECF No. 15-7.

In January 2017, the Jefferson County Circuit Court entered a judgment against Miller for $24,122.19, plus interest of 4.95% from October 11, 2011. Order 1/9/2017 1, ECF No. 24-2.

3

Miller has appealed the Jefferson County Circuit Court's entry of the judgment to the Kentucky Court of Appeals, Case No. 2017-CA-000112. The case is apparently still pending.

In September 2015, Miller filed suit in this Court against Javitch Block. Compl. 1, ECF No. 1. Miller alleges that representations that Javitch Block made to him regarding the debt were materially false, deceptive, and/or misleading and thus violated the federal Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692e(2), (4), (5), (10), and (11) (Count I). *Id*. ¶¶ 21–28. Miller also asserts that Javitch Block used unfair or unconscionable means to collect or attempt to collect the debt, or sought to collect amounts that were not authorized, which violated § 1692f(1) of the FDCPA (Count II). *Id*. ¶¶ 29–32. Miller additionally contends that Javitch Block failed to send him required information within five days of filing its bill of costs in January 2015, thereby violating § 1692g(a) of the FDCPA (Count III). *Id*. ¶¶ 33–37.

Miller further asserts several state law claims against Javitch Block. He claims that Javitch Block engaged in wrongful garnishment in violation of Kentucky Revised Statute § 411.080 (Count IV). *Id*. ¶¶ 38–45. He contends that Javitch Block is liable for wrongful use of civil proceedings and abuse of process (Count V). *Id*. ¶¶ 46–53, 55. Miller finally maintains that Javitch Block intentionally or negligently caused him emotional distress in violation of Kentucky law (Count VI). *Id*. ¶ 54. Miller seeks compensatory, statutory, and punitive damages, interest, an injunction, and an award of attorney fees and costs. *Id*. at 9–10.

Javitch Block has now moved for summary judgment on Miller's claims under Federal Rule of Civil Procedure 56(a). Mot. Summ. J. 1, ECF No. 22. It also has moved to stay further proceedings on its motion for summary judgment under Federal Rule of Civil Procedure 56(d)(3) pending resolution of the case in the Jefferson County Circuit Court and the Kentucky Court of Appeals. Mot. Stay 1, ECF No. 25.

III.    Javitch Block's Motion to Stay the Proceedings under Rule 56(d)(3)

Federal Rule of Civil Procedure 56(d)(3) provides, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . issue any other appropriate order." Rule 56(d) is intended to provide a mechanism for the parties and the court "to give effect to the well-established principle that 'the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment.'" *Cardinal v. Metrish*, 564 F.3d 794, 797 (6th Cir. 2009) (quoting *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 281 (6th Cir. 2005)). *See also Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995) ("Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case.").

Javitch Block is the moving party on the motion for summary judgment. *See* Mot. Summ. J. 1, ECF No. 22. As the moving party, Javitch Block cannot rely on Rule 56(d)(3) for its motion to stay the proceedings pending the resolution of the case in the Jefferson County Circuit Court and the Kentucky Court of Appeals. The Court thus declines to grant Javitch Block's motion to stay the summary judgment proceedings under Rule 56(d)(3).

The Court, however, will consider Javitch Block's arguments presented in its motion to stay under its inherit power to "control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants." *Ohio Envtl. Council v. United States Dist. Court, S. Dist.*, 565 F.2d 393, 396 (6th Cir. 1977) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). To begin, Javitch Block asserts that the Court should stay the summary judgment proceedings because the unresolved state court motions could have the effect of collateral estoppel or *res judicata* on the instant case. Mot. Stay 3, ECF No. 25. Miller argues in

opposition that the doctrines of *res judicata* and collateral estoppel are inapplicable, given the facts of this case. Resp. Opp. Mot. Stay 2, ECF No. 26.

In considering whether a judgment has a preclusive effect on future litigation, a federal court must apply the law of the state where the prior judgment was rendered. *Trafalgar Corp. v. Miami Cty. Bd. of Comm'rs*, 519 F.3d 285, 287 (6th Cir. 2008). In Kentucky, for *res judicata*, or claim preclusion, to bar further litigation, "there must be identity of the parties," "there must be identity of the cases of action," and "the action must have been resolved on the merits." *Yeoman v. Commonwealth Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). There is not identity of parties in this case because the defendant in the state court action is National Collegiate and the defendant here is Javitch Block. *See* St. Ct. Compl. 1, ECF No. 15-2; Compl. 1, ECF No. 1. Thus, the doctrine of *res judicata* would not bar further litigation on Miller's claims pending in this Court, and Javitch Block's argument to the contrary lacks merit.

For collateral estoppel to bar further litigation in Kentucky cases, there must be "identity of issues," "a final decision or judgment on the merits," "a necessary issue with the estopped party given a full and fair opportunity to litigate," and "a prior losing litigant." *Moore v. Cabinet for Human Res.*, 954 S.W.2d 317, 319 (Ky. 1997). Collateral estoppel would not bar further litigation in this case because the issues here are different from those in the state court case. The state court case involves National Collegiate's entitlement to a judgment against Miller on the student debt; this case involves Javitch Block's alleged violations of the FDCPA. *See* St. Ct. Compl. 1, ECF No. 15-2; Compl. 1, ECF No. 1. As such, Javitch Block's argument that the Court should stay the summary judgment proceedings because of the potential effect of collateral estoppel is unpersuasive.

Javitch Block also asserts that the Court should stay the summary judgment proceedings because "there are undetermined facts which must be resolved prior to this Court's determination on summary judgment." Mot. Stay 3, ECF No. 25. Javitch Block does not specify which undetermined facts still need to be resolved or how these facts would assist the Court in determining whether to grant its motion for summary judgment. Miller contends, however, that the outcome of the state court action over the validity of the debt will have no bearing on his claims. Resp. Opp. Mot. Stay 3, ECF No. 25.

Miller alleges Javitch Block violated the FDCPA in seeking to recover the debt that he owed to National Collegiate. Compl. ¶¶ 21–28, ECF No. 1. The discovery in the state court suit regarding the validity of the debt would not affect Miller's claims in this Court. Therefore, Javitch Block's assertion that the Court should stay the summary judgment proceedings because of the future resolution of unspecified facts fails.

As Javitch Block's arguments in support of staying the motion for summary judgment are unavailing, the Court will presently consider its motion for summary judgment.

III. <u>Javitch Block's Motion for Summary Judgment under Rule 56(a)</u>

Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must

view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Javitch Block argues that summary judgment is appropriate on Miller's claims that it violated 15 U.S.C. § 1692g(a) by failing to send him required information within five days of filing its bill of costs in January 2015 (Count III), that it engaged in wrongful garnishment in violation of Kentucky Revised Statute § 411.080 (Count IV), that it engaged in wrongful use of civil proceedings and abuse of process in violation of Kentucky law (Count V), and that it committed the state law torts of negligent or intentional infliction of emotional distress (Count VI).[2] Mot. Summ. J. 6–24, ECF No. 22. Javitch Block does not appear to address Counts I and II.

### A. Whether Summary Judgment Should Be Granted on Count III

Javitch Block contends that summary judgment should be granted on Miller's claim that it failed to send him required information within five days of filing its bill of costs in January 2015, thereby violating 15 U.S.C. § 1692g(a) (Count III). Mot. Summ. J. 6–11, ECF No. 22. Javitch Block explains that the FDCPA requires only one notice validating a debt be sent to the debtor, and it sent Miller the one required notice in its initial communication with him. *Id*. Miller maintains, however, that Javitch Block failed to provide to provide subsequent § 1692g(a) notices as the amount of the debt changed.[3] Resp. Opp. Mot. Summ. J. 10–11, ECF No. 24.

---

[2] Javitch Block does not identify the specific claims against which it is moving for summary judgment in its motion. The Court has attempted to identify the claims upon which Javitch Block is moving for summary judgment by comparing the arguments in its motion for summary judgment with the claims alleged in the complaint.

[3] Miller also argues that Javitch Block failed to provide certain information required under 15 U.S.C. § 1692g(b). Resp. Opp. Mot. Summ. J. 9–10, ECF No. 24. Because Miller has not asserted claims that Javitch Block violated § 1692g(b) in the complaint, the Court will not address this argument.

Section 1692g(a) provides that "within five days after the initial communication with a consumer in connection with the collection of any debt," the debt collector must provide the debtor with a validation notice that includes:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

This information is intended to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Todd v. Capital One Fin. Corp.*, No. 3:07-CV-189-S, 2007 U.S. Dist. LEXIS 82485, at *6 (W.D. Ky. Nov. 5, 2007) (quoting S. Rep. No. 95-382, at 4 (1977)). When a consumer receives notice of a debt that he believes he does not owe, he can thus "dispute the debt before further collection attempts are taken." *Id*.

The language of the statute does not require the debt collector to send a separate validation notice to the consumer when the amount of the debt changes. Moreover, although the United States Court of Appeals for the Sixth Circuit has not yet addressed the issue, there is some authority to support the proposition that only the initial communication between the debt collector and debtor must include the validation notice required by § 1692g(a). For example, the United States Court of Appeals for the Third Circuit addressed alleged § 1692g(a) violations in follow-up correspondence and, after defining the term "initial," noted:

> We agree with the common-sense conclusion reached by other courts that "there can be only one 'initial communication' between a debt collector and a consumer, and any communication that follows the 'initial communication' is necessarily not an 'initial' communication." *Derisme v. Hunt Leibert Jacobson, PC,* 2010 U.S. Dist. LEXIS 119351, 2010 WL 4683916, at *5 (D. Conn. Nov. 10, 2010). Faced with cases in which a validation notice did accompany an initial communication, but the plaintiff argued that the FDCPA was violated by subsequent communications lacking such a notice, courts have concluded that a debt collector has no obligation to send a validation notice with any communication other than the initial communication. *Weber v. Computer Credit, Inc.*, 259 F.R.D. 33, 39 (E.D.N.Y. 2009); *Spira v. Ashwood Fin., Inc.*, 358 F.Supp.2d 150, 158–59 (E.D.N.Y. 2005); *see also Ehrich v. RJM Acquisitions LLC*, 2009 U.S. Dist. LEXIS 113929, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009) ("Any letters after [the first communication between a debt collector and a consumer] are irrelevant for purposes of the notice requirement in Section 1692g(a).").

*Peterson v. Portfolio Recovery Assocs., LLC*, 430 F. App'x 112, 114–15 (3d Cir. 2011). More recently, the United States District Court for the Northern District of Ohio observed that § 1692g(a) does not require a debt collector to send a separate validation notice to the debtor's spouse when the debtor has received a validation notice and has not disputed the debt. *Molesky v. State Collection & Recovery Servs., LLC*, No. 3:12cv2639, 2015 U.S. Dist. LEXIS 132738, at *25 (N.D. Ohio Sept. 30, 2015); *see also Dorsey v. Schumacher*, No. 3:14-cv-1190-SI, 2015 U.S. Dist. LEXIS 16580, at *6 (D. Or. Feb. 11, 2015) ("But only a debt collector's 'initial communication' with a debtor is subject to the notice requirement."); *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 158, (E.D.N.Y. 2005) ("Section 1692g(a) merely requires a validation notice to be sent to a consumer on or before five days after an initial communication is sent by the debt collector. There is nothing in the statute which requires follow-up letters to contain the validation notice, including letters that are mailed within the validation period.").

Given this available case law and the plain language of § 1692g(a), Javitch Block was required to provide a validation notice only in its initial communication with Miller. Javitch

Block did not violate the FDCPA when it failed to send Miller multiple validation notices as the amount of the debt changed. Therefore, summary judgment is appropriate on Count III.

B.     Whether Summary Judgment Should Be Granted on Count IV

Javitch Block further asserts that summary judgment should be granted on Miller's claim under Kentucky Revised Statute § 411.080 for wrongful garnishment (Count IV) because the state court opinion and order was a final order that entitled it to all available post-judgment remedies, including wage garnishment. Mot. Summ. J. 13–21, ECF No. 22. Miller does not directly address Javitch Block's arguments; instead, he merely asserts that no judgment had been entered against him when the law firm garnished his banking account. Resp. Opp. Mot. Summ. J. 7, ECF No. 24.

A garnishment in Kentucky may be obtained after a "final judgment in personam has been entered in any court of record of this state." Ky. Rev. Stat. Ann. § 425.501. A final judgment is "a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02." Ky. R. Civ. P. 54.01. Moreover, a final order "grants or denies the ultimate relief prayed by the parties," whereas an interlocutory order "requires further steps to be taken in the adjudication of their rights." *Commonwealth ex rel. Reeves v. Unknown Heirs of Brown*, 249 S.W.2d 52, 53 (Ky. 1952). But a judgment "cannot be final merely because it decides some question of law or fact relating even to final relief, nor merely because it decides what are the rights of the parties as to such relief." *Bondurant v. Apperson*, 61 Ky. 30, 31 (Ky. 1862).

Here, the state court opinion and order determined the issues of Miller's liability on the debt. The Jefferson County Circuit Court asserted that it found that "no evidence ha[d] been presented to suggest that there [was] a genuine issue of material fact as to whether Mr. Miller

[was] in default of the loan agreement." Ex. 1 at 44, ECF No. 22-1. The state court also found that Miller's accompanying motion for sanctions had been mooted because National Collegiate was entitled to judgment. *Id*. Finally, the Jefferson County Circuit Court stated that the state court opinion and order was a "final and appealable order." *Id*. Even taking all reasonable inferences and facts in favor of Miller, this language reflects the intention of the Jefferson County Circuit Court to grant the ultimate relief sought by the parties. As such, the state court opinion and order was a final judgment that entitled Javitch Block to seek a garnishment against Miller. Summary judgment will be granted on Count IV.

      C.      <u>Whether Summary Judgment Should Be Granted on Count V</u>

Javitch Block also argues that summary judgment should be granted on Miller's claim that it engaged in wrongful use of civil proceedings and abuse of process in violation of Kentucky law (Count V). Mot. Summ. J. 11–13, ECF No. 22. Javitch Block asserts that it was entitled to pursue any legal remedy that the state court was empowered to give. *Id*. Miller claims that the judgment lien and garnishment order were unlawful under Kentucky common law. Resp. Opp. Mot. Summ. J. 11, ECF No. 24.

In Kentucky, the tort of abuse of process "consists of 'the employment of legal process for some other purpose than that which it was intended by the law to effect.'" *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998) (quoting *Raine v. Drasin, Ky*., 621 S.W.2d 895 (1981)). Abuse of process has two essential elements: "an ulterior purpose" and "a willful act in the use of the process not proper in the regular conduct of the proceeding." *Sprint Communs. Co., L.P. v. Leggett*, 307 S.W.3d 109, 114 (Ky. 2010) (citing *Simpson*, 962 S.W.2d at 394). Filing a groundless lawsuit may not constitute an abuse of process. *Id*. at 119.

In this case, even assuming arguendo that Javitch Block improperly used the civil process, Miller has not provided any evidence of its ulterior motive. The available evidence instead shows that Javitch Block sought to satisfy the debt that the state court had determined Miller owed National Collegiate. *See* Ex. 1 at 44, ECF No. 22-1. Garnishment 1, ECF No. 15-6; Bill of Costs 1, ECF No. 15-8; J. Lien 1, ECF No. 15-7. Given that Miller has not shown that Javitch Block's actions constituted abuse of process under Kentucky law, summary judgment will be granted on Count V.

D.  <u>Whether Summary Judgment Should Be Granted on Count VI</u>

Javitch Block contends that summary judgment should be granted on Miller's claim for negligent or intentional infliction of emotional distress (Count VI) because there is no factual or legal support for the claim. Mot. Summ. J. 21–23, ECF No. 22. In support of this argument, Javitch Block cites to *Osborne v. Keeney*, 299 S.W.3d 1, 6 (Ky. 2012). Miller does not respond to this argument.

In *Osborne*, an airplane crashed into the plaintiff's living room. 299 S.W.3d at 6. The plaintiff's attorney failed to timely file a lawsuit on her behalf against the airplane pilot. *Id*. at 7. The plaintiff then sued her attorney for legal practice. *Id*. A jury awarded her, among other damages, $500,000 for pain and suffering resulting from the airplane crash. *Id*. The parties appealed. *Id*. at 8. The Kentucky Supreme Court determined that plaintiffs who are alleging negligent infliction of emotional distress or intentional infliction of emotional distress cannot recover "without showing, by expert or scientific proof, that the claimed emotional injury is severe or serious." *Id*. at 6.

In this case, Miller has not provided expert or scientific proof to support his negligent and intentional infliction of emotional distress claims. As such, summary judgment is appropriate on Count VI as a matter of law.

IV. Conclusion

The Court will deny Javitch Block's motion to stay. The Court will grant in part and deny in part its motion for summary judgment. The Court will grant Javitch Block's motion for summary judgment on Counts III, IV, V, and VI and will dismiss these claims with prejudice. Because Javitch Block does not appear to address Counts I and II, the Court will deny its motion for summary judgment on these claims. An order will be entered in accordance with this memorandum opinion.

April 29, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**